GEORGIA, FLORIDA AND ALABAMA RALWAY COM-
PANY *v.* LASSETER, by next friend.

1. The Supreme Court has no jurisdiction to hear contradictory evidence impeaching the verity of a record from the trial court.   In the absence of any statutory provision, this court has no authority to try a traverse to a return of service of a bill of exceptions, or to refer to the trial court the issue of fact as to the truth or falsity of such return.   The bill of exceptions and entries thereon showing jurisdiction of the Supreme Court, the writ of error will not be dismissed.

2. In stating the contentions upon which a plaintiff relies for a recovery, it is proper for the trial judge to confine his statement thereof to those matters which it is necessary that the plaintiff should establish by proof; and if the defendant desires any instructions given the jury touching admissions made in the plaintiff's pleadings, an appropriate request to charge in regard thereto should be presented. In the present case, the court did not, in summing up the contentions of the defendant, express an opinion as to any question of fact at issue.

3. The right of the plaintiff to recover did not depend upon his showing that the employee of the defendant railway company of whose negligence he complained was not a fellow-servant, but a vice-principal; and this being so, whether this employee was or was not the company's foreman was not, under the evidence submitted, a substantial issue of fact which the court should have directed the jury to consider and determine.

4. The court charged the statutory rules applicable to cases of this character with sufficient particularity, and was not bound, in the absence of a timely written request, to specifically apply these rules to the peculiar facts of the case on trial.

5. The defendant was not entitled to have the jury instructed upon the theory that the injury to the plaintiff was the result of an unavoidable accident, and can not justly complain that the court incorrectly charged the law relating thereto.

6. A general exception to a charge on the ground that the law was not thereby correctly presented is not well taken unless the charge contains a single proposition which is objectionable for that reason, or, if it contains several distinct propositions, none of them present a correct abstract statement of law; and such an assignment of error does not raise any question as to whether the charge was as full and as explicit as the excepting party had a right to expect. Nor is a new trial demanded where the court omits to charge the law as to the preponderance of evidence, not being requested to do so.

7. A finding in favor of the plaintiff was warranted by the evidence; and the damages awarded him were not excessive, viewed in the light of the character of his injury, the fact that it was permanent, and that he suffered severe physical pain for a considerable period.

Argued February 6, — Decided May 10, 1905.

Action for damages. Before Judge Bower. City court of Bainbridge. August 4, 1904.

*Donalson & Donalson, B. B. Bower Jr.,* and *A. G. Powell,* for plaintiff in error. *Albert H. Russell,* contra.

EVANS, J. The plaintiff below, by his next friend, brought a suit for damages against the defendant railway company for personal injuries alleged to have been received while in its employ. The case made by the plaintiff's petition was substantially as follows: Plaintiff was employed to work in the company's machine-shops. On the day of his injury, he found it necessary, in

order to properly perform the duties assigned to him, to have a chisel, he not having been supplied with one. For the purpose of obtaining information as to where he could get a chisel, he approached one Wheeler, who was acting as foreman of the company's shop, and who was the proper person to whom to apply. Wheeler was at work in the shop chipping brass, and fragments of the metal were flying in front of and to the right and left of him, though not towards him. In order to avoid being hit by the fragments of metal, plaintiff approached Wheeler from behind and inquired where to find the chisel needed. Wheeler stopped chipping the brass, and plaintiff then advanced to his side and received instructions as to where to get a chisel; but before plaintiff could retire to a place of safety, Wheeler began again to chip the brass, and caused a fragment of the metal to strike plaintiff's right eye. The injury thus inflicted produced total blindness in that eye. The plaintiff was entirely free from fault. He was at the time but sixteen years of age. Had he not been injured as alleged, he could have earned one hundred dollars per month by the time he reached his majority, but because of his injury his earning capacity will be decreased one half. He suffered intense physical pain for a period of four months after the injury, and will continue to experience great pain and suffering, not only in the eye of which he has lost the sight, but in his left eye also.

The defendant filed an answer in which it alleged, that on the day of the injury the plaintiff was assigned work on the outside of the shop and was under the direction of a special boss, from whom he could have obtained a chisel, if needed, but he did not in fact need one to do the work; that Wheeler was not acting as foreman of the shop and had no authority over the plaintiff, but was at the time in the building performing special work; that there was no occasion for the plaintiff to go in the shop, but he did so and approached Wheeler as an idler and a loafer, in violation of his duty as an employee, for the purpose of killing time, as it was just before the noon hour, when the work at the shop ceased; that plaintiff was out of his place, Wheeler not being a foreman or an employee upon whom the plaintiff could properly call for the desired tool, and the injury was the result of the plaintiff's own carelessness and wilful conduct in going where he had no right to go and interfering with an employee of the defendant.

The trial of the case resulted in a verdict for five thousand dollars in favor of the plaintiff. A motion for a new trial was made by the defendant, but the same was overruled, and the defendant sued out a bill of exceptions in which complaint is made of the court's refusal to grant a new trial, for the reasons assigned in the motion therefor.

1. The bill of exceptions contained a sworn entry by W. V. Wardell that he had previously served a true and exact copy of the original bill of exceptions on the defendant in error. Before the call of the case in this court, the defendant in error presented a written motion, alleging that he was not served with a copy of the original bill of exceptions; that the paper served on him did not appear to have been certified by the trial judge, the certificate was not dated, and there was nothing thereon to indicate it had ever been presented to the judge. The prayer of the motion was for a rule nisi requiring the plaintiff in error to show cause, at such time as this court might direct, why that part of the affidavit of service by W. V. Wardell reciting that he had served a copy of the original bill of exceptions on the defendant in error should not be stricken and expunged from the record as false, and that, if the answer to the motion should present an issue of fact, this court would refer such issue to the trial court for determination. The plaintiff in error filed both a demurrer and an answer to the motion. The answer denied the allegations of the motion respecting the service of the defendant in error with a copy of the original bill of exceptions, and the demurrer challenged the power and authority of this court to submit the issue of fact to the trial court. Afterwards this court passed an order directing the original bill of exceptions, the motion to strike the evidence of service, the answer, and the demurrer to the motion, to be returned to the city court of Bainbridge, with instructions that the judge of that court submit to a jury, to be empanelled under the law for the empanelling of juries in civil cases in that court, the following question: "Did W. V. Wardell, on or before the 10th of August, 1904, serve a true and exact copy of the original bill of exceptions in the above-stated case upon E. Lasseter, as next friend of Walter L. Lasseter?" The order provided for the certification of the verdict and the return of the papers to this court. This order was passed without prejudice to the right of the plain-

tiff in error to question the jurisdiction of this court to pass such order, or to insist that the service as admitted to have been made was sufficient in law.　　Pursuant to the order of reference, the issue of fact was tried by a jury in the city court of Bainbridge, and the verdict was in favor of the defendant in error, that he had not been served with a copy of the original bill of exceptions. Whereupon a motion for a new trial was made by the railway company, which was overruled, and it sued out and had certified a bill of exceptions assigning error upon the judgment overruling its motion for a new trial.　　When the main case was called for argument here, counsel for the defendant in error moved to dismiss the original bill of exceptions, because the defendant in error had not been served with a copy of the same.　Counsel for the plaintiff in error insisted that, as the record showed service, the main case should be heard on its merits, and that all of the proceedings relating to the reference of the issue of fact as to service were nugatory and void, because this court was without jurisdiction in the premises.

The Supreme Court is a constitutional court of limited jurisdiction.　It has no original jurisdiction, but is a court alone for the trial and correction of errors from the superior courts and certain city courts.　Civil Code, § 5836.　Unless the return of service of the bill of exceptions is traversable, the course pursued by this court in submitting the issue as to service to the city court is indefensible ; for it will be apparent that unless this court has the power to hear evidence upon the traverse of a return of service, it is without power to delegate to the court from which the writ of error issued, or to any other tribunal, authority to determine that issue of fact.　In other words, if the power does not exist in this court, it can not be delegated to any other tribunal whose jurisdiction depends upon the order of reference.　At common law, an entry of service was not traversable.　The reason of the rule rested upon the sanctity of the official return.　The entry of service was made by an officer under oath, and such entry was entitled to great sanctity.　It was the prescribed method whereby the court was informed that its process had been served, and it acted upon such information.　If the return was false, the remedy of the injured party was an action against the officer for a false return.　This was the rule which originally obtained in

this State, and the return of a sheriff could not be assailed, until the General Assembly authorized its traverse. *Higgs* v. *Hudson,* 8 *Ga.* 317, 321; *Dozier* v. *Lamb,* 59 *Ga.* 461. The General Assembly also authorized the practice of serving writs in certain cases by a person other than an officer; but an entry of service by one who is not an official must be verified by the affidavit of the person making the return. When so verified, it is the equivalent of a return by a sworn official whose duty it was to serve the writ. While the Supreme Court is a constitutional court and its jurisdiction is defined by the constitution, yet the legislature may prescribe the manner of bringing cases to this court, and the practice so prescribed is exclusive, and unless it is complied with, the writ of error must be dismissed. *Hardee* v. *Lovett,* 85 *Ga.* 620. The prescribed mode of bringing a case to this court is by a bill of exceptions, and the certificate of the judge thereto is the writ of error. When the bill of exceptions is certified by the trial judge, the case is no longer pending in his court and he is wholly without authority to pass any order or to do any act with reference to the same. *State* v. *Powers,* 14 *Ga.* 388. While the signing of the bill of exceptions deprives the trial court of jurisdiction of the case, the jurisdiction of the Supreme Court only becomes complete upon the filing of the bill of exceptions in the office of the clerk of the trial court. *Armstrong* v. *Hand,* 36 *Ga.* 270. The statute requires the bill of exceptions to be served upon the opposite party. The service may be made by the sheriff, the plaintiff in error, his counsel, or any other person. *Walter* v. *Kierstead,* 74 *Ga.* 18. The return of service must be entered upon the original bill of exceptions. If entered upon any other paper, even one purporting to be a true copy of the bill of exceptions, the return can not be considered. *Arnett* v. *Gurley,* 59 *Ga.* 666. The original bill of exceptions, with the entry of service thereon, is certified to this court by the clerk of the trial court as the true bill of exceptions. The jurisdiction of this court then arises upon a record consisting of an original bill of exceptions, with a return of service duly entered thereon, and a certified transcript of the record in the trial court. Such a record imports absolute verity, and can not be contradicted by aliunde proof. In *Jones* v. *Rountree,* 96 *Ga.* 230, a motion was made by counsel for the defendant in error to be permitted to traverse a

return made by a deputy sheriff that he had served a copy of the bill of exceptions upon the movant, and this court held it was without jurisdiction to hear evidence upon such traverse, and refused to dismiss the writ of error. Being informed in the manner prescribed by the General Assembly that it has acquired jurisdiction of a case, this court will not entertain extraneous proof offered to impeach the record and to show want of jurisdiction. So strictly has this rule been enforced, that this court has declined to look outside of the record before it or to allow a return of service to be entered on the bill of exceptions after it has been transmitted to this court, even though service was in fact made but by inadvertence no entry thereof was made on the bill of exceptions. *Hightower* v. *Hightower*, 13 *Ga.* 204. In the case of *Turner* v. *Collins*, 8 *Ga.* 252, counsel for the plaintiff in error proposed to supply the omission by an entry nunc pro tunc; opposite counsel resisted the motion for leave to do so, and submitted a counter-affidavit in which the fact of service was denied; and this court refused to allow the entry to be made, holding that it was without jurisdiction to try the issue of fact, and that the entry, if made, would be conclusive evidence of service and could not be controverted by the defendant in error. Again, in *Coleman* v. *Ransom*, 45 *Ga.* 316, where a motion was made to dismiss the writ of error because there was no entry of service upon the bill of exceptions, plaintiff's counsel stated that, "if time was given, he could prove that a copy of the bill of exceptions was served upon" the opposite party, but the "court replied that time could not be given; that service must appear on the bill of exceptions, by an acknowledgment, or by a return of an officer or affidavit of the party perfecting it." It appears that in *Meador* v. *Dent*, 48 *Ga.* 126, counsel for the plaintiff in error secured a written waiver of service from the opposite side, but as the record did not disclose that service had been perfected, the writ of error was dismissed, the court holding it was without jurisdiction and that the parties could not by consent confer jurisdiction upon it. And it was not until later, when the legislature expressly authorized such a waiver of service to be made (Civil Code, § 5547), that this court could entertain jurisdiction of a case where the record failed to disclose the jurisdictional fact of service upon the defendant in error.

It may be suggested that the statute allowing a traverse to a false entry of service is broad enough to include and apply to a return of service of a bill of exceptions sued out to this court. Civil Code, § 4988, provides that "The entry of the sheriff, or any officer of the court, or his deputy, may be traversed by the defendant at the first term after notice of such entry is had by him, and before pleading to the merits." This language indicates that the General Assembly had in mind service of a process returnable to a trial court, and that there was no intention to change the long-established rule which applied in this court because it was without jurisdiction to try such an issue of fact. Indeed, in *Turner* v. *Collins*, 8 *Ga.* 253, this court held that an entry of service upon a bill of exceptions, "if made as directed, is conclusive — it can not be controverted here, as the return of ministerial officers can be in the other courts of this State." We therefore conclude that the motion to be allowed to traverse the entry of service and have the issue thus raised determined by this court or referred for determination to the trial court is unauthorized by law, and that the proceedings based upon this motion are to be regarded as a nullity; as this court was without jurisdiction to submit any such issue to the trial court for adjudication. As the record of the case shows on its face that this court has jurisdiction, the bill of exceptions will not be dismissed. The case of *Cooper* v. *Nisbet*, 118 *Ga.* 872, does not afford a precedent for pursuing any other course. In that case, the plaintiff in error applied for a mandamus to compel the clerk of the trial court to duly enter upon the bill of exceptions the date of its filing in his office; in reply to the writ, the clerk denied the bill of exceptions was deposited in his office within the time prescribed by law, and the plaintiff in error then asked to be allowed to file a traverse to the answer of the clerk. As, under the Civil Code, § 5555, the trial court had concurrent jurisdiction to compel the clerk, by mandamus, to perfect the bill of exceptions, and as this court was without jurisdiction to try the issue of fact presented by the traverse, the bill of exceptions was returned to the trial court in order that appropriate proceedings to cure the alleged defect might be taken in that court. This was in accord with express statutory provision that no writ of error shall be dismissed because of any defect which may be cured during the term of this court to which a case is returnable; and the

jurisdiction of the trial court did not in any way depend upon the order of reference, but upon the section of the Civil Code above cited.    Upon the merits of the case, we have reached the conclusion that the judgment of the court below should be affirmed.    In the event of a reversal, however, the defendant in error would not have been without remedy.  Equity will enjoin a judgment fraudulently obtained; and, perhaps, the plaintiff in error, by knowingly taking advantage of a false entry of service, would be liable in an action on the case for the amount of the verdict returned in favor of the prevailing party in the trial court.

2. The court instructed the jury as to the contentions of the plaintiff with reference to the circumstances under which he received his injury, following closely the allegations relied on in his petition.    Complaint is made, however, that the court did not in this connection direct the attention of the jury to the fact that these allegations disclosed that the plaintiff knew, when he approached Wheeler, that the latter was engaged in an occupation which rendered an approach to him dangerous, on account of the flying fragments of metal, unless he was approached from behind.    Counsel for the plaintiff in error insist that the court should have done so, as what the plaintiff below alleged in his petition amounted to an admission that "he knew Wheeler was doing dangerous work," and he would be liable to injury from the fragments of flying metal if he approached Wheeler from the front or from either side.    The court, in stating the contentions upon which the plaintiff relied for a recovery, properly confined its instructions to those matters which it was necessary that the plaintiff should establish by evidence.    If the defendant wanted the court to charge as to the effect of any admissions against interest set forth in the plaintiff's pleadings, a timely written request to so charge should have been presented.    *Wrightsville and Tennille R. Co.* v. *Lattimore*, 118 *Ga.* 581 (7).

Further complaint is made that the court, while stating to the jury the contentions of the defendant company; intimated an opinion as to a vital issue in the case, having instructed them that it contended that "before the foreman was acquainted with his presence," the plaintiff put himself in a situation of peril and received the injury wholly because of his own fault.  This inadvertance in referring to Wheeler as "the foreman" was not cal-

culated to impress the jury with the belief, as counsel insist, that the court intended to be understood as saying that the company "contended and admitted that Wheeler was a foreman over the plaintiff on that occasion." The court, in the same connection, stated to the jury that the defendant contended that the plaintiff needed no tool and had no right to go into the shop for one, if it was needed, but "ought to have gone to Anderson" (the company's master mechanic); that "Mr. Wheeler was not at fault, that he was doing his work, that he had not called upon this party to come there, . . . did not know he was there," and that plaintiff had no business going there to get a chisel at all, having been set to work on a locomotive. Furthermore, the court immediately followed the instructions given, as to what the defendant contended, with the statement that he did so merely in order to direct their attention to the issues in the case; that they were to determine these contentions, and that the court could not intimate any opinion as to the truth of the same.

3. Whether Wheeler was, in point of fact, the company's foreman was not the vital and controlling issue in the case. The case was not one to which the common-law doctrine that a master is not liable for an injury to one servant caused by the negligence of a fellow-servant was applicable; for, in this State, an exception to the common-law rule is made where the employer is a railway company. Civil Code, § 2610. If the plaintiff's injury was caused by the negligence of another employee in the service of the company, and the plaintiff was himself without fault, the fact that they were fellow-servants would be no bar to his recovery. Civil Code, § 2323. In the motion for a new trial error is assigned on the failure of the court to charge " as to whether Wheeler was a foreman or coservant of plaintiff," and to explain to the jury what effect the determination of this question would have on the plaintiff's case. In the absence of a special written request, the court's omission to so charge was not a matter of which the company can justly complain. The company's master mechanic, Anderson, testified that he was in charge of its shops and exercised control and supervision over all of its employees, including Wheeler, who was merely a machinist working in the shops; that the company had no foreman of its shops, and if the plaintiff " wanted a chisel, he should have told " him, the wit-

ness.     But he did not undertake to swear that any rule on the subject had been promulgated, or that the plaintiff had ever been instructed to apply to him when he needed tools not furnished him; nor did this witness deny the statement of Wheeler that he had been instructed by him " to see that these boys worked around there," and, acting upon this authority, had told "them to do little things around the shop."     The plaintiff testified that on previous occasions, when he had need of a chisel to do the work assigned to him, he had gone to Wheeler to get one.     This statement was not contradicted.     The plaintiff evidently regarded Wheeler as a foreman, for he testified he was the foreman of the machine-shop and the proper person to whom to apply for the chisel desired.     In view of this evidence, it was really immaterial whether Wheeler was, as matter of law or in point of fact, technically the company's foreman.     If the plaintiff needed the chisel, as he testified was true, and had not been instructed by the master mechanic to apply to him for tools, certainly the plaintiff was at liberty to go to Wheeler, as he had previously done, even though Wheeler was no more than a fellow-workman.     The court, under the undisputed evidence, could not properly have charged otherwise, and it is obvious that any authorized instructions on the subject would not have inured to the benefit of the defendant company.

4. The only defense of the railroad company which the testimony introduced in its behalf tended to establish was that the plaintiff's errand was a mere pretense, and that he approached Wheeler without his knowledge and was injured before he knew of his presence or had warning to desist from his work.     Upon this branch of the case, the court explicitly charged the jury that before they could find the defendant liable for damages, " they must be satisfied from the evidence that the plaintiff was without fault on his part, without negligence on his part, and that there was no fault or negligence on his part that contributed to the injury ; " for if they found that the plaintiff "was at fault in such a manner as to bring about the injury, or contributed to the injury, then he [could] not recover anything out of the defendant."     In its motion for a new trial the company nevertheless insists that the court erred in failing to charge that " the plaintiff was bound to exercise ordinary care and diligence in approaching Wheeler,

44

who was engaged in dangerous work, and ordinary care and diligence in placing himself where the brass chips were not likely to fly," and in avoiding the flying chips, etc.; that Wheeler was only bound to exercise ordinary care in chipping the brass, etc.; and that if both the plaintiff and Wheeler were negligent at the time of the injury, there could be no recovery against the company. The company further insists that the court should, of its own motion, have given in charge the provision of the Civil Code, § 2612, to the effect that a servant assumes the ordinary risks of his employment and is bound to exercise his own skill and diligence to protect himself. The charge given was as full and explicit as was necessary, the court having previously stated the various contentions of the parties. *L. & N. R. Co.* v. *Thompson,* 113 *Ga.* 983 (2). If the defendant wished the law specifically applied to the facts, an appropriate request to charge should have been made.

5. In response to a verbal request made by counsel for the company to charge on the subject of unavoidable accident, the court instructed the jury that should they believe the injury to the plaintiff was the result of "pure accident," yet if they believed "the accident occurred by reason of the negligence of the company or its employees, and that the plaintiff was without negligence himself," then they " would hold the company liable ; " but should they " believe that it was a pure accident, or that the plaintiff was at fault or negligent to such an extent as to contribute to the accident, even if the company was at fault itself, the company would not be liable." As the plaintiff in error correctly asserts, this charge was " not the law as to an accident," for the injury could not be attributed to accidental cause unless neither the plaintiff nor the defendant was at fault. However, a careful reading of the evidence discloses that the company was not entitled to any charge based on the theory of an accidental injury, the evidence relied on by the plaintiff showing that Wheeler was negligent in the manner charged, while the evidence introduced by the company was to the effect that the 'plaintiff was culpably negligent in placing himself in a situation of peril before giving Wheeler notice of his presence. As applied to the facts of this particular case, the charge given amounted to an instruction that if the injury was brought about by the negligence of the company, and the plaintiff was himself free from fault, the

company would be liable notwithstanding the injury was wholly unexpected and unintentional; but if it was purely accidental, not being attributable to any negligence on the part of the company, or if the plaintiff contributed to any negligence chargeable to the company, it would not be liable. Though incorrect as an abstract proposition of law, the charge was not prejudicial to the defendant, but really hurtful to the plaintiff.

6. The instructions given to the jury as to the rules for determining, in civil cases, where lies the preponderance of evidence are excepted to upon the general ground that the court incorrectly stated the law upon this subject. The charge excepted to seems unobjectionable. Certainly a number of the instructions given were in accord with the familiar rules usually to be applied. This being so, the exception to the charge is not well taken, no specific objection to any portion of it being pointed out. *Anderson* v. *Railway Co.*, 107 *Ga.* 501; *Owens* v. *State*, 120 *Ga.* 209. In the brief of counsel for the company the criticism is made that the charge only "half way defines" what constitutes a preponderance of evidence. If so, the fact that the court ought to have given a fuller charge could not be taken advantage of by excepting to the giving of instructions which were correct and pertinent, so far as they went. *Roberts* v. *State*, 114 *Ga.* 450. No request to charge on this subject was made; and had the court wholly failed to charge thereon, the omission to do so would not require the grant of a new trial. *Small* v. *Williams*, 87 *Ga.* 682 (6).

7. A finding in favor of the plaintiff was warranted by the evidence. The verdict returned was not, we think, excessive. Aside from the fact that the injury produced total blindness in one eye, of the use of which he has forever been deprived, his other eye was affected, he suffered much physical pain, and the injury has brought about a permanent disfigurement which must prove a source of regret and distress throughout the remainder of his life, upon which he has just entered. Five thousand dollars may, or may not, compensate him; this amount does not indicate bias or prejudice on the part of the jurors, or suggest that their verdict was emotional, rather than compensatory for the injury sustained.

*Judgment affirmed. All the Justices concur, except Candler, J., absent, and Lumpkin, J., not presiding.*