## 31694. SUTTON *v.* PERDUE.

Decided September 26, 1947.

*Davis & Davis,* for plaintiff.   *Evans & Evans,* for defendant.

PARKER, J.   Arthur Sutton made application for a release from custody, on his own recognizance, as provided in the Code, § 107-205, in a bail-trover case pending in the Superior Court of Rabun County.   A hearing was had before the judge and a judgment rendered denying the application.   The bill of exceptions assigns error on the ground that the judgment was contrary to law and the evidence and was without law and evidence to support it.

Where any person about to commence an action for the recovery of personal property shall require bail, such person, his agent, or attorney shall make affidavit that the property is in the possession, custody or control of the defendant, and that he has reason to apprehend that the same has been or will be concealed or moved away, or will not be forthcoming to answer the judgment that shall be made in the case.   When such affidavit shall be made and filed in the clerk's office of the court in which the case is pending, and a copy is affixed to the petition or process, it shall be the duty of the officer serving the petition to take a bond payable to the plaintiff for the forthcoming of the property to answer such judgment as may be rendered in the case.   Upon the failure of the defendant to give bond it is the duty of the officer to seize the property, and if the property is not to be found and can not be seized the defendant shall be committed to jail, to be kept until said property shall be produced or until he enters into bond for the eventual condemnation money.   See the Code, §§ 107-201, 107-202, 107-203.

The law further provides that when a defendant in an action for the recovery of personal property in which bail is required as above set forth, shall, by reason of inability to give security,

be held in imprisonment, he may petition under oath the judge of the court in which the suit is pending, stating that "he is neither able to give the security required by law nor to produce the property, and can furnish satisfactory reasons for its nonproduction," it becomes the duty of the judge to proceed in a summary way to hear evidence upon the facts contained in said petition; and if he finds "that the petitioner can neither give the security nor produce the property, and that the reasons for its nonproduction are satisfactory," he shall discharge the petitioner upon his own recognizance; but otherwise he shall recommit him to custody. Code. § 107-205.

Although the statute requires an application for discharge from custody by a defendant in a bail-trover case to be under oath, it appears that the petition in the instant case was not verified. This point, however, is not raised in the record and we make no ruling on it.

In support of the application Sutton testified that he did not have the automobile described in the bail-trover action in his possession, custody or control, on May 20, 1947, when the suit was filed; that he had not since that date had the same in his possession, custody or control, and had never had said automobile in his possession, custody or control, and that he had never seen said automobile and knew absolutely nothing about where it was and could not produce it; and that he was not able to make bond in said case, and had not been able to make said bond on account of poverty. On cross-examination he testified further with reference to the making of bond as follows: "I have asked R. E. Cannon to sign my bond in this case and he would not do it. I engaged counsel and I do not know of any other person actually asked by me or them to sign my bond." The applicant showed by another witness, an attorney in Atlanta, that he had tried to get a bonding company in Atlanta which was on a criminal appearance bond for the applicant in Fulton County to sign the bond for him in the bail-trover case, and that the bonding company had refused to do so. This seems to have been all of the testimony relating to the inability of the applicant to give a bond on account of poverty.

Roger Perdue Jr., the plaintiff in the trover suit, testified that the automobile involved was his property and was stolen from its

parking place in Cornelia, Georgia, on the night of February 13, 1947, since which time he had not seen it. He introduced a witness named Harry Sappington who testified that he and another party named Reagan stole the automobile from where it was parked in Cornelia on the night of February 13, 1947, and carried it to Arthur Sutton's home, parking it on the opposite side of the highway from his house, about two o'clock in the morning on February 14; that Sutton told him and the other party that he wanted a Ford automobile of the type they stole in Cornelia, and that Sutton paid them $200 for the automobile. He testified further that Sutton told him the car was being painted over the next day after it was stolen, that he knew Sutton well and had stolen a great number of automobiles for him which he disposed of. The witness admitted that he had helped to steal 47 automobiles, most of them in Atlanta.

Sutton took the stand again and denied the truth of Sappington's testimony and repeated that he had never had anything to do with the automobile involved; and that he had never had any dealings with Sappington or Reagan, the other party named by Sappington as having participated in the theft. Sutton testified when first examined that he did not know Harry Sappington or the other party, and had never been in Sappington's company as far as he knew; but he admitted that he was in the automobile business, buying and selling, in January and February, last, and also in the wood business; that he could not recall what days he worked, if any, during January and February, 1947, and did not know whether he made any money; that he sold some cars in South Carolina, the only definite place he remembered selling a car in South Carolina being Greenville, and although he sold at other places, he could not remember them. He told of selling a car to each of two men in Rabun County in 1947, but could not remember the names of any others. It will be noted that the evidence of Sutton as to his business transactions was vague, uncertain, indefinite and equivocal. Furthermore, it was in direct conflict with the testimony of Sappington who claimed to have delivered the stolen automobile to Sutton. We think that this is a fair summary of the material parts of the evidence upon which the judge had to decide the case.

It will be observed that an applicant for discharge on his own recognizance in a case of this kind must show three things, namely:

that he can not give the security required, that he can not produce the property, and that his reasons for its nonproduction are satisfactory. *Wyatt* v. *C. & S. Bank,* 29 *Ga. App.* 528 (2) (116 S. E. 34); *Shinholser* v. *Jordan,* 115 *Ga.* 462 (41 S. E. 610); *Tennessee Valley Fert. Co.* v. *Stevens,* 140 *Ga.* 774 (1) (79 S. E. 840). The statute places upon the judge the duty of acting as judge and jury, and if the evidence is in conflict he must necessarily decide which witness or witnesses he will believe. "The judge is the one to determine all these issues. Unless his determination affirmatively appears to be a manifest abuse of discretion it will not be disturbed." *Everett* v. *Holcomb,* 1 *Ga. App.* 794, 797 (58 S. E. 287). It follows that if the judge's decision is supported by any competent evidence, and no error of law appears, we can not hold as a matter of law that he abused his discretion in finding against the applicant. The testimony of Sutton and Sappington was in irreconcilable conflict. Manifestly one or the other did not tell the truth. The judge as the trier of the facts had to decide whether to believe Sutton or Sappington. Apparently he believed the latter and disbelieved the testimony of the former. "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." Code, § 38-1806. Under this statute the judge was authorized to disregard the testimony of Sutton entirely if he believed that Sappington told the truth.

The burden was on the petitioner to show that he could neither give the security nor produce the property, and that the reasons for its nonproduction were satisfactory. If the trial judge found under the evidence that the applicant was in possession of the property immediately after it was stolen from the plaintiff, as the testimony of Sappington tended to show, in the absence of any explanation as to what he had done with the property, the court was authorized to find that the applicant's reasons for its nonproduction were not satisfactory. In other words, the only reason assigned by the applicant for his inability to produce the property was that it had never been in his possession, and he knew absolutely nothing about it. If this was not true, as the court was authorized to find under the evidence as pointed out, the

court was right in determining that the reasons for the nonproduction of the property were not satisfactory.

Furthermore, the court was authorized to find, under the testimony of the applicant on cross-examination, that he had failed to carry the burden of showing his inability because of poverty to give bond for the property. He offered no concrete or specific evidence as to his financial standing or worth, and testified that he himself had asked only one person to sign his bond, and that he did not know of any other person actually asked by himself or his attorneys to sign the bond. "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague or equivocal. And unless there be other evidence tending to establish his right to recover, he is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him." *Henry* v. *N. C. & St. L. Ry. Co.,* 50 *Ga. App.* 49 (176 S. E. 906), and citations; *Liberty National Life Ins. Co.* v. *Mitchell,* 73 *Ga. App.* 673 (37 S. E. 2d, 723).

Some other questions incidentally involved, but not controlling, have been argued by counsel for both sides in their briefs. But the case is controlled by our ruling that the evidence authorized the finding of the trial judge, and other matters argued do not show any error of law requiring a reversal. We hold that the court was authorized under the evidence to find against the applicant, and there is nothing in the record to show a manifest abuse by the trial judge of the discretion placed in him by law.

*Judgment affirmed. Felton and Gardner, JJ., concur. Gardner, J., designated to preside in place of Sutton, C. J., disqualified.*